**Aaron Lambert SLOAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–86–0116–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 12, 1987.

Joel M. Androphy, Berg & Androphy, Houston, for Sloan.

John B. Holmes, Jr., Harris County Dist. Atty., Winston E. Cochran, Jr., Lee Coffee, Harris County Asst. Dist. Attys., Houston, for State.

Before DUGGAN, LEVY and HOYT, JJ.

## OPINION

DUGGAN, Justice.

A jury found the appellant guilty of possession of a controlled substance, methamphetamine. After the appellant pled true to two enhancement allegations, the trial court assessed his punishment at 45 years confinement. He asserts nine points of error.

On October 15, 1984, officers of the Houston Police Department, using a warrant obtained after surveillance of the property, searched the appellant's house and a detached outbuilding and confiscated some 3,540.4 grams of substances containing a lesser amount of methamphetamine and one gram of methamphetamine in crystalized form.

Police arrested the appellant's co-defendant, Donald Wayne Engelking, in the detached building, as well as the appellant's wife, who was in the house along with another person. Later, several miles away, officers arrested the appellant at a car dealership sales lot.

In three points of error, the appellant challenges the sufficiency of the evidence to support his conviction. We must review the evidence in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Chambers v. State*, 711 S.W.2d 240 (Tex.Crim.App.1986).

The State had the burden of proving that the appellant intentionally or knowingly possessed a controlled substance, namely methamphetamine, in an amount weighing at least 400 grams by aggregate weight, including any adulterants and dilutants. *See* Tex.Rev.Civ.Stat.Ann. art. 4476–15, secs. 4.04(a); 4.04(d)(2); 4.02(b)(6) (Vernon Supp.1987).

In his first point of error, the appellant asserts that the evidence is insufficient to show his possession. In order to show possession, the State must prove that the accused exercised care, control, and

management over the contraband, and that he knew that the matter possessed was contraband. *Rodriquez v. State,* 635 S.W.2d 552 (Tex.Crim.App.1982); *Wilkes v. State,* 572 S.W.2d 538 (Tex.Crim.App.1978). The State's burden is met by the introduction of additional facts and circumstances that affirmatively link the accused to the contraband and create a reasonable inference that he knew of the contraband's existence and that he exercised control over it. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). However, mere presence at a place prior to the commission of the alleged offense, or close proximity to the contraband itself, is insufficient absent additional independent facts and circumstances tending to show knowledge and control. *Id.*

■ The record reflects that Houston Police officers began surveillance of the appellant's house and the outbuilding at around 2:00 a.m. At approximately 2:30 a.m., the appellant and his co-defendant were seen leaving the outbuilding and entering the house. The men returned to the outbuilding at approximately 6:00 a.m., and the appellant returned to the house sometime later. He was next seen leaving in his car around 7:30 a.m., and he was arrested shortly thereafter. During surveillance and while the appellant was inside the outbuilding, the officers heard noises and smelled an odor that they associated with methamphetamine production. The odor emanated from the outbuilding and reached them some 30 to 50 feet away. At about 10:30 a.m., the officers entered the outbuilding and arrested the co-defendant.

A subsequent search of the outbuilding produced containers of solutions containing methamphetamine and by-products of an intermediate stage in the manufacture of methamphetamines, as well as raw materials typically used for that purpose. The building appeared to be equipped and utilized as a laboratory.

The appellant's neighbor testified that the appellant began occupying the house in August, and that he was seen there regularly until the time of the arrest. The State also produced utility bills for electricity and gas for the residence in his name and offered a document, recovered from a table in the dwelling, bearing the appellant's signature. There is no evidence that the outbuilding was supplied with separate utility connections or that it was a separate residence.

Officers positively identified the appellant as one of the two men seen leaving and reentering the outbuilding during the early morning hours at a time when the odor of methamphetamine production permeated the area, and they identified him again in the courtroom.

We conclude that the facts and circumstances "affirmatively link" the appellant to the controlled substance in such a manner to show sufficiently that he had knowledge of the contraband as well as control over it. *McGoldrick v. State,* 682 S.W.2d at 578, and to enable a rational factfinder to find him guilty of the alleged offense. The appellant's first point of error is overruled.

■ In his second point of error, the appellant complains that the State's proof is insufficient to show that he possessed 400 grams aggregate weight of a controlled substance. The appellant does not deny that the overall quantity of substances confiscated exceeds the amount alleged in the indictment, but claims that the other substances identified were neither an "adulterant" nor a "dilutant," as defined by Tex.Rev.Civ.Stat.Ann. art. 4476–15, the Controlled Substances Act.

In addition to methamphetamine, the State's chemist testified that he found phenyl-2-propanone ("P2P"), "meth oil," and other components. A chemist for the defense found, in addition to P2P, a material "consistent with aluminum hydroxide," as well as "wastewater from a clean-up of methamphetamine oil."

Neither "adulterant" nor "dilutant" is defined in article 4476–15, and although some examples are listed under the definition of "drug paraphernalia," Tex.Rev.Civ. Stat.Ann. art. 4476–15, sec. 1.02(14)(F), we do not find that the legislature intended this list to be all-inclusive. *See McGlothin*

*v. State,* 705 S.W.2d 851 (Tex.App.—Fort Worth 1986, no pet.).

A "diluent" and a "dilutant" are functional equivalents. *Webster's New Collegiate Dictionary* (1981). The chemist for the defense testified that a diluent is something added to a primary substance to increase its bulk, and the State's chemist stated that a diluent would make a substance weaker. Under public health statutes, a drug is adulterated "if any substance has been (1) mixed or packed therewith so as to reduce its quality or strength; or (2) substituted wholly or in part therefor." Tex.Rev.Civ.Stat.Ann. art. 4476–5, sec. 15(d) (Vernon Supp.1987).

We note as well that " 'controlled substance' means a drug, substance, or its *immediate precursor*...." Tex.Rev.Civ. Stat.Ann. art. 4476–15, sec. 1.02(4) (emphasis added). "Immediate precursor" is defined as "a substance ... which is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance ..." Tex.Rev.Civ. Stat.Ann. art. 4476–15, sec. 1.02(18). Both chemists testified that P2P was used to manufacture methamphetamine.

We conclude that the evidence was such that a rational jury could find the requisite methamphetamine in 400 grams aggregate weight, including adulterants and dilutants, and we overrule the appellant's second point of error.

■ The appellant's fifth point of error asserts that the State's proof was insufficient to show an intent to possess or to adulterate or dilute. The State's indictment alleged that the appellant intentionally and knowingly possessed a controlled substance of 400 grams in aggregate weight including adulterants and dilutants. It did not allege that the appellant intentionally and knowingly adulterated or diluted the controlled substance; thus the State is not required to prove such conduct.

■ A significant quantity of substances was confiscated during a search of an outbuilding at the appellant's residence. Chemists for the State and the defense testified that these solutions contained methamphetamine and other substances that are by-products from the manufacture of methamphetamine. In addition, raw materials and lab equipment typically used for that purpose were found in the outbuilding. The work occurred in the early morning hours and in secrecy. The odor of that production was distinctive. The appellant was seen leaving and returning to the outbuilding at a time when this work was being carried out.

We find that the evidence was sufficient to show that the appellant knew that a controlled substance was being produced at his residence and that he had the requisite intent to possess the same. Accordingly, the appellant's fifth point of error is overruled.

In his third point of error, the appellant maintains that the trial court erred in failing to charge the jury on his definition of "adulterants" and "dilutants" or "diluents."

■ The appellant sought a charge derived from the definition of "drug paraphernalia," which defines a diluent or an adulterant as "quinine hydrochloride, mannitol, mannite, dextrose, or lactose, used or intended for use in cutting a controlled substance." Tex.Rev.Civ.Stat.Ann. art. 4476–15, sec. 1.02(14)(F). Expert witnesses testified that the particular chemicals listed in sec. 1.02 and in the appellant's requested charge, were not identified in the confiscated contraband. The requested definition, therefore, would not aid the jury in deciding the fact issues. *Guerrero v. State,* 487 S.W.2d 729 (Tex.Crim.App.1972). This is also not a case where either the evidence of an affirmative defense or a direct statutory definition required the court to submit the appellant's definition. *Sanders v. State,* 707 S.W.2d 78 (Tex.Crim.App.1986); *Penry v. State,* 691 S.W.2d 636, 653–654 (Tex. Crim.App.1985). The trial court properly refused the requested charge, and the appellant's third point of error is overruled.

■ In his fourth point of error, the appellant urges that Tex.Rev.Civ.Stat.Ann. art. 4476–15, the Controlled Substances Act, is unconstitutionally void for vague-

ness due to its failure to define and/or mention adulterants and dilutants or diluents in the schedules for penalty groups.[1]

Statutes are vested with a presumption of validity, and we must construe them in such a way as to uphold their constitutionality. *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App.1979). In the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices, or construed in a sense generally understood. *Id.* To be unconstitutionally void for vagueness, a statute must either forbid or require the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its applications, *Ely*, 582 S.W.2d at 419; *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), or it must allow the possibility of arbitrary and discriminatory enforcement. *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

We find that the statute gives ample notice of the conduct forbidden in the alleged offense, viz., possession of a controlled substance, methamphetamine. The appellant's fourth point of error is overruled.

In points of error six through nine, the appellant complains that the trial court erred in overruling his objections to the prosecutor's improper arguments, which he asserts urged the jury to ignore its oath and find the appellant guilty of criminal conduct not alleged in the indictment. The complained of remarks referred to the presence of a methamphetamine lab, the manufacture of methamphetamine, which was not alleged as an offense, and the prosecutor's congratulations to officers for doing a good job in closing down a methamphetamine lab.

Proper jury argument is confined to four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; and (4) a plea for law enforcement. *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex.Crim.App.1980). To constitute reversible error, improper argument must, in light of the record as a whole, be either extreme or manifestly improper, violate a mandatory statute, or inject new facts that are harmful to the accused. *Dickinson v. State*, 685 S.W.2d 320, 322 (Tex. Crim.App.1984).

In each instance, we find that the arguments violated no statute, injected no new facts, and were neither extreme nor manifestly improper, but fell within the parameters of permitted argument as reasonable deductions from the evidence. *Denison v. State*, 651 S.W.2d 754 (Tex.Crim. App.1983).

The appellant's points of error six through nine are overruled.

The judgment is affirmed.

LEVY, J., dissents.

LEVY, Justice dissenting.

I respectfully dissent. The substances that were seized with the methamphetamine and identified as byproducts of the drug's manufacture were not "adulterants" and "dilutants" as defined by statute. Consequently, the appellant could have been properly charged with possession only of a much smaller quantity of methamphetamine, "including any adulterants and dilutants."

Both chemists who testified at trial agreed that the 3,540.4 grams of liquid that were seized at appellant's arrest contained no more than 1.9 grams of methamphetamine. Another gram of methamphet-

1. Article 4476–15, sec. 4.04 provides in relevant part that if:
   (a) ... a person commits an offense if he knowingly or intentionally possesses a controlled substance in Penalty Group 1 ...
   (c) ... and the amount of the controlled substance possessed is by aggregate weight, including any adulterants or dilulants 28 grams or more ...

[the offense would be] (d)(2) punishable by confinement in the Texas Department of Corrections for life or for a term of not more than 99 years or less than ten years, and a fine not to exceed $100,000, if the amount of the controlled substance possessed is, by aggregate weight, including any adulterants or dilutants, 400 grams or more.

amine in solid form was seized; the total weight of methamphetamine, 2.9 grams, was sufficient to charge the appellant with no more than a second degree felony,[1] punishable by two to 20 years imprisonment. Tex.Penal Code Ann. sec. 12.33(a) (Vernon 1974).

The State's chemist, Henry Forjohn, testified that the liquid seized contained phenyl–2–propanone. The defense's chemist, Art Simon, identified the remaining liquid as phenylacetone and aluminum hydroxide. Phenyl–2–propanone ("P2P") is another name for phenylacetone, and is identified by the Controlled Substances Act as an "immediate precursor to ... methamphetamine." Tex.Rev.Civ.Stat.Ann. art. 4476–15, sec. 2.04(f)(2) (effective Sept. 1, 1985). Forjohn testified that P2P is a "reagent," defined as "something [that] when mixed with another substance combines with that substance to produce a new substance."

*Neither expert testified that P2P or aluminum hydroxide are adulterants or dilutants.* Simon testified that those substances are not adulterants or dilutants. Forjohn's testimony is silent on this particular point. The State's contention that the jury "reasonably" found the additional substances to be adulterants or dilutants is based on Forjohn's general definitions of the statutory terms. Forjohn defined "adulterant" as any impurity in a substance, and "dilutant" as a substance that makes another substance weaker.

Simon's definitions were more specific. He defined "adulterant" as a substance added to a drug with the specific intent of defrauding the consumer into thinking that he or she has purchased the pure drug. He stated that a "diluent," or "dilutant," is a "material added to a pharmaceutical with the specific intent of increasing the bulk of the final product." Thus, P2P and aluminum hydroxide are not adulterants or dilutants, because they are necessary reactive chemicals used to manufacture methamphetamine, as both chemists testified.

The substances were not intended to defraud the consumer or to increase the bulk of the final product.

It is always incumbent on the State to prove every element of the offense beyond a reasonable doubt. *Wright v. State,* 603 S.W.2d 838, 840 (Tex.Crim.App.1980). There was absolutely no testimony that the additional substances were "adulterants" or "dilutants." Nor did Forjohn testify that P2P was an impurity, as he defined "adulterant," or that it was added to make another substance weaker, as he defined "dilutant." Indeed, he could not have accurately testified to that effect, because the meaning of the statutory terms "adulterants" and "dilutants" does not encompass the constituent reactive chemicals used in the manufacture of drugs.

Although the jury is the exclusive judge of the facts in every criminal trial, "it is bound to receive the law from the court and be governed thereby." Tex.Code Crim. P.Ann. art. 36.13 (Vernon 1981). Accordingly, it is the role of the court to construe statutory language, and the basic principle of statutory interpretation is to diligently seek the intention of the legislature in enacting the statute in question. Tex.Gov't Code Ann. sec. 312.005 (Vernon Supp.1987).

In its brief, the State concedes that the terms "adulterant" and "dilutant" are "words of art related to the business of producing controlled substances." If a statutory term is used as a word of art, the word has the meaning given by experts in the particular subject matter. *Id.* at sec. 312.002(b).

The terms "adulterant" and "dilutant" are defined in two works by experts in the study of drug abuse. "Adulteration" is defined, in the first work, as "[d]ilution of a drug with either an inert material to add bulk or some more potent material to create a greater effect." E. Abel, *A Dictionary of Drug Abuse Terms and Terminology* 5 (1984). P2P is neither an inert material nor a more potent material added to

---

1. Sec. 4.04(b) of Tex.Rev.Civ.Stat.Ann. art. 4476–15 (Vernon Supp.1987) provides:

   An offense under subsection (a) of this section is a felony of the second degree if the amount of the controlled substance possessed is, by aggregate weight, including any adulterants or dilutants, less than 28 grams.

intensify the effect. "Dilutant" is an "[i]nert material used to increase the bulk of an active substance without affecting its activity." *Id.* at 48. This definition does not apply to P2P, a reagent.

The second work defines "adulteration" as "[t]he process by which a drug is made impure or inferior by the addition of an improper substance." R. O'Brien & S. Cohen, *The Encyclopedia of Drug Abuse* 9 (1984). Within the context of illicit methamphetamine manufacture, P2P is not an "improper substance," nor is it used to make a drug "impure or inferior." It is, as mentioned before, a necessary constituent in the manufacture of amphetamine.

The State contends that "adulteration" is sufficiently defined by the Texas Food, Drug and Cosmetic Act to support the conviction. Tex.Rev.Civ.Stat.Ann. art. 4476–5 (Vernon Supp.1987). That Act states: "A drug ... shall be deemed to be adulterated: (a) ... (2)(A) if it has been prepared, packed, or held under insanitary conditions whereby it may have been ... rendered injurious to health...." *Id.* at sec. 15. The State argues that Simon's testimony that ingestion of P2P would pose a health risk supports the jury's implied finding that P2P is an adulterant. But the plain language of the statute requires that an adulterated drug is one that itself is rendered injurious to health by being "held under insanitary conditions." The State's strained reading of the Food, Drug and Cosmetics Act does not support its contentions.

The majority cites another section of the Food, Drug and Cosmetics Act, which states that a drug is adulterated "if any substance has been (1) mixed or packed therewith so as to reduce its quality or strength; or (2) substituted wholly or in part therefor." *Id.* at sec. 15(d). There was no testimony that P2P was so "mixed or packed," or "substituted," because P2P is a reagent, not a packaging component.

The State contends, and the majority agrees, that the examples of "adulterants" and "dilutants" listed under the definition of "drug paraphernalia," art. 4476–15, sec. 1.02(14)(F), were not intended by the legislature to be all-inclusive. The section states that "drug paraphernalia" includes, but is not limited to, "a diluent or adulterant, such as quinine hydrochloride, mannitol, mannite, dextrose, or lactose, used or intended for use in cutting a controlled substance." *Id.*

It is clear that the examples given are not an exclusive list of adulterants and dilutants, but it is also clear that, at least in this section, the legislature intended that adulterants and dilutants are substances used or intended for use in cutting a controlled substance. A drug is "cut" when "inert material [is] added ... in order to increase its bulk." E. Abel, *supra,* at 43. Simon and Forjohn agreed that P2P is not a cutting agent.

There is no reason to infer that the Legislature intended different meanings in the two sections in which it refers to "adulterants" and "dilutants." Before September 1, 1981, the Controlled Substances Act made no reference to adulterants, dilutants, or diluents. At that time, the definition of paraphernalia was added, with its reference to adulterants and diluents. Tex. H.B. 733, 67th Leg. (1981). Simultaneously, the provisions establishing aggravated offenses were enacted. These provisions refer to adulterants and dilutants. Tex. H.B. 730, 67th Leg. (1981). It is presumed that contemporaneous statutes are actuated by the same policy and imbued with the same spirit, and that they should be read together and harmonized unless their provisions are absolutely repugnant. *Ex parte Harrell,* 542 S.W.2d 169, 172 (Tex.Crim. App.1976). Accordingly, the use of the terms "adulterants" and "dilutants" in subchapter four of the Controlled Substances Act, the section here in controversy, refers to substances used or intended for use in cutting a controlled substance.

The illegal methamphetamine industry has been recognized as a substantial threat to this country's efforts to control the abuse of narcotics. *See* Staff of House Select Comm. on Narcotics Abuse and Control, 96th Cong., 2d Sess., *Report on Illicit Methamphetamine Laboratories in the Delaware Valley* (Comm.Print 1981).

There is no doubt that control of methamphetamine laboratories is a proper concern of the Controlled Substances Act, but the Act, as written, does not allow the prosecution of methamphetamine manufacture as a *possessory* offense on the theory that the chemicals *used to produce methamphetamine* are adulterants or dilutants. Statutes are to be construed according to their meaning at the time of enactment, *Kirby Lumber Corp. v. Hardin Indep. School Dist.*, 351 S.W.2d 310, 312 (Tex.Civ.App.— Waco 1961, writ ref'd n.r.e.), and the history of the Act makes clear that chemicals used in manufacture are not adulterants or dilutants.

The State chose to prosecute the appellant under an inappropriate section of the Controlled Substances Act, although there are other sections that properly applied to his case, and that could have served as a legitimate basis for the sentence imposed. The appellant could have been prosecuted for the *manufacture* of less than 28 grams of methamphetamine, punishable as a first degree felony. Art. 4476–15, sec. 4.03(b). P2P is itself a controlled substance, *id.* at sec. 2.04(F)(2), and a conviction for possession of over 28 grams of P2P is punishable by 5 to 99 years imprisonment. *Id.* at sec. 4.04(d). But the appellant was charged with possession of methamphetamine, and because the evidence established possession of less than 28 grams, he could not have been prosecuted for greater than a second degree felony. *Id.* at sec. 4.04(b).

Regardless of the sufficiency of the evidence to support a conviction under these other sections of the Act, "the sufficiency of the evidence is measured by the charge *that was given.*" *Boozer v. State*, 717 S.W.2d 608, 610 (Tex.Crim.App.1984) (emphasis in original). The charge in this case called for a verdict of guilty if the jury found that the appellant "possess[ed] a controlled substance, namely Methamphetamine, weighing at least 400 grams by aggregate weight, including any adulterants and dilutants...." The evidence was insufficient, in my view, to support a guilty verdict based on this charge. Therefore, I dissent.

I would reverse the judgment of the trial court with directions to enter a judgment of acquittal.