**UNITED STATES ex rel. Alejandro DANEFF, Appellant,**

v.

**Robert HENDERSON, Superintendent, Auburn Correctional Facility, Auburn, New York, Appellee.**

**No. 1052, Docket 74–1124.**

United States Court of Appeals, Second Circuit.

Argued May 14, 1974.

Decided Aug. 7, 1974.

———◆———

Abraham Werfel, Jamaica, N.Y., for appellant.

David R. Spiegel, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y.; Samuel A. Hirshowitz, Asst. Atty. Gen. New York City, of counsel), for appellee.

Before KAUFMAN, Chief Judge, and HAYS and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a denial of a writ of habeas corpus by Judge Wyatt below in a memorandum opinion handed down October 9, 1973. The relevant facts, as set forth in the district court's opinion, need to be reiterated here.

Appellant was indicted on February 9, 1970, for criminal possession of a dangerous drug in the first degree, a "class A felony" under New York Penal Law § 220.33 (renumbered § 220.23 effective April 24, 1970).[1] That indictment charged appellant with possession of 18 ounces of "light [white] powder" in which there was "cocaine present." It was apparently stipulated in the trial court by the State and appellant's counsel (who is also his counsel on this appeal) that "cocaine was present in each" of the two bags in which the 18 ounces of powder were found. No chemical analysis—other than that detecting the presence of *some* cocaine in the white powder—was performed to determine the "purity" of the 18-ounce mixture, that is, the extent of cocaine present. Appellant at no time requested or moved to

have such a test made, but he did demur to the indictment on April 20, 1970, on the same grounds of unconstitutionality of the underlying statutory scheme advanced here, a motion which was in due course denied. In an apparent plea bargain appellant pleaded guilty on September 22, 1970, of violation of Penal Law § 220.22, a class B felony. The record shows that appellant raised before the trial court—by motion in arrest of judgment—and before all possible appellate courts, including by petition for certiorari to the United States Supreme Court, the fourteenth amendment argument he advances here, to no avail. People v. Daneff, 37 A.D.2d 917, 325 N.Y.S.2d 902 (1971) (conviction aff'd without opinion), aff'd mem., 30 N.Y.2d 793, 334 N.Y.S.2d 897, 286 N.E.2d 273, motion to amend granted, 31 N.Y.2d 667, 336 N.Y. S.2d 903, 288 N.E.2d 805 (1972), cert. denied, 410 U.S. 913, 93 S.Ct. 977, 35 L.Ed.2d 276 (1973). There is no question that appellant exhausted all available state remedies and that his petition was properly before the court below.

I. *"Waiver" and "Standing"*

Before proceeding to the merits of appellant's claim, it is necessary to consider whether he has "standing" to raise the claim he makes in this habeas petition.

■ A. *The Guilty Plea.* The State argues that appellant by knowingly and voluntarily pleading guilty to a violation of § 220.22, "waived" any right he otherwise would have had to challenge the constitutionality of the statutes under which he was convicted. A similar contention was carefully considered and flatly rejected by this court in United States ex rel. Newsome v. Malcolm, 492 F.2d 1166 (2d Cir. 1974). The fact that certiorari was granted on the State's petition, 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1974) (No. 73–1627), does not deprive *Newsome* of precedential value for us. The State argues that *Newsome* is dis-.

---

1. The statutes herein involved were repealed and replaced by a new statutory scheme effective September 1, 1973.

tinguishable in that the attack made there was "collateral" to the main question preserved on appeal—that of the refusal of the trial court to suppress certain evidence. Here, the State argues, there is no other such issue, and the attack goes to the "heart" of the guilty plea itself. The short answer to the State's contention is that the appellate courts of New York including the New York Court of Appeals, implicitly rejected this argument of the State by themselves considering and rejecting appellant's constitutional claim *on the merits*. Thus, the State's contention reduces to the proposition that appellant's guilty plea, while it did not preclude him from raising his constitutional claim in the state appellate courts, should be read to prevent his raising the same claim on federal habeas corpus. This argument was rejected in *Newsome*, 492 F.2d at 1170–1171, and we reject it here.

B. *The "Purity" Question.* The court below raised, without deciding, the question whether appellant had "standing" to challenge the statutes under which he was convicted. We note at the outset that appellant does not simply attack the constitutionality of the statute, § 220.22, under which he pleaded guilty and was convicted. Rather, he, in essence, attacks as violative of the due process and equal protection clauses of the fourteenth amendment the entire statutory scheme of New York which imposes penalties for possession of various drugs, including cocaine, on the basis of the weight of the mixture possessed as opposed to the actual content of the dangerous drugs themselves.[2] Appellant's claim throughout, most simply put, is that there is no rational basis for this statutory scheme which assesses punishment on the basis of the possession of a quantity of "mixture" without regard to the actual quantity of the dangerous drug present in that mixture. One of several examples offered by appellant is that a person in possession of 54 grains of pure cocaine—one grain less than $\frac{1}{8}$ ounce—would, if convicted, be subject to punishment as a misdemeanant, whereas one possessing the same 54 grains of cocaine mixed together with 16 ounces of milk sugar or other diluent would be subject to punishment as a class A felon.

■■ The State argues here, and the court below was concerned by the fact, that nowhere in the record does it appear as to how much cocaine, by weight, was present in the 18 ounces of "white powder" which was seized while in appellant's possession. Thus, the State contends, we must assume for purposes of this appeal that, in light of the guilty plea, the mixture seized could have contained, at least theoretically, 18 ounces of pure cocaine. Assuming this *arguendo*, appellant's attack on the statutes would be of no avail *to him* because, the argument runs, reading the statutes to punish on the basis of quantity of drug rather than quantity of mixture possessed results in appellant's still being amenable to punishment as a class A felon. In other words, assuming appellant was carrying pure cocaine, he was not "injured" by the enforcement of the statutes himself. Before reaching the merits of this argument, we note that none of the state appellate courts passing on Daneff's claim ever remotely suggested that Daneff did not have "standing" in this sense to raise his claim. While

2. Under § 220.05, the possession of *any* quantity of a "dangerous" drug is a class A misdemeanor, punishable—as a first offense—by a maximum penalty of imprisonment for one year. Under § 220.15, possession of "preparations, compounds, mixtures or substances," containing a drug, of an aggregate weight of less than one ounce but at least $\frac{1}{8}$ ounce is punishable as a class D felony. Under § 220.20, possession of such a "mixture" of less than eight ounces but at least one ounce is punishable as a class C felony. Under § 220.22, possession of a "mixture" of less than 16 ounces but at least eight ounces is punishable as a class B felony. Under § 220.23, possession of a "mixture" of 16 ounces or more is punishable as a class A felony, with a sentence of life imprisonment being possible under § 70.00.

state-court determinations of standing are not binding on the lower federal courts considering federal questions previously raised in and decided by state courts, *cf.* Coleman v. Miller, 307 U.S. 433, 466, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) (Frankfurter, J., concurring), it also seems to us that state-court recognition of standing to raise federal constitutional questions in criminal cases might well be particularly persuasive in federal habeas proceedings. If the State considers one of its citizens sufficiently "injured" by the operation of a state statute to pass on that citizen's claim of injury, then the additional *federal* requirements that the claim be fairly presented to the state courts in the first instance, Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), should serve to ensure that only genuine claims are presented and decided.

The State claims that the burden was on appellant to introduce evidence as to the amount of pure cocaine present in the 18 ounces of white powder seized. This argument would have greater force if the provisions of N.Y.C.P.L. § 240.20, permitting rather broad discovery along the lines of Fed.R.Crim.P. 16, had been in effect prior to appellant's conviction.[3] But appellant's failure or omission to move for inspection and scientific analysis before pleading can well be explained by the very narrow view of permissible defense discovery taken over the years by the New York courts in the exercise of their general supervisory powers and absent the express liberalizing statute now embodied in C.P.L. § 240.20. *E. g.,* People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 33–34, 156 N.E. 84 (1927). *See* Practice Commentary to C.P.L. art. 240, at 465–466 (McKinney 1971). By

what we must consider the appellant's inability to obtain pretrial scientific analysis of the drug in question under the New York law applicable to the conviction here in question, the State must be deemed precluded from assertion of the "standing" argument here.

## II.   *The Merits*

The thrust of Daneff's equal protection and due process claim is that the sentencing scheme established for possessors of dangerous drugs creates inherently unequal, and indeed irrational, treatment of offenders who are guilty of what he contends are identical offenses. Under the New York statutes, the possession of a given amount of pure cocaine (or heroin or marijuana or other drug) and the possession of the same amount of cocaine (or other drug) mixed with various amounts of diluent are viewed as different offenses, the latter carrying heavier sanctions (the sanction varying with the quantities involved). Our inquiry under both fourteenth amendment claims is here the same: under the equal protection clause we must only ascertain whether there is a rational basis for the classifications drawn by the New York legislature, McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the very same inquiry to be made under the due process clause. We think there is such a basis.

Appellant's argument, and a very skillful one it is, may be more fully stated as follows. The statutes differentiate in terms of sanction between persons who possess the same amount of *narcotic* substance on the basis of the amount of inert or non-narcotic substance or material

---

3.  The provisions of C.P.L. § 240.20, effective Sept. 1, 1971, were rather broadly construed in People v. Johnson, 68 Misc. 2d 708, 327 N.Y.S.2d 690 (Dutchess Cty.Ct.1971) (Aldrich, J.), but not so broadly as to permit the defense to obtain pretrial scientific analysis of a seized drug in People v. Goetz, 352 N.Y.S.2d 829, 832–833 (Dutchess Cty.Ct.

1974) (Aldrich, J.). The reasoning of *Goetz* appears open to question in an appropriate case, however, *see* United States v. Reid, 43 F.R.D. 520 (D.Ill.1967), and there are other favorable decisions permitting scientific testing by a defendant under Fed.R.Crim.P. 16. *E. g.,* United States v. Acarino, 270 F.Supp. 526 (S.D.N.Y.1967).

with which the narcotic is commingled. As a matter of common knowledge he points out that heroin is generally received in the United States in an 80 to 90 per cent pure state, then "cut" perhaps several times to reach the user in a state of 77 per cent or under "purity." Cocaine or, more accurately, cocaine hydrochloride, is marketed, as evidenced by, *e. g.*, Turner v. United States, 396 U.S. 398, 401, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), in a mixture often containing as low a percentage as 5 per cent or less of the narcotic. To treat the possessor of 54 grains of pure cocaine only as a misdemeanant and one who possessed that quantity mixed in 18 ounces of powder as a class A felon, he argues hypothetically, is wholly irrational. And he answers the suggestion that possession of the larger quantity of mixture is an indication of likelihood or potentiality of the possessor's being a seller or distributor and of the scale on which he might operate as such by pointing out not only that the statutes here involved (and offense charged) relate only to possession and not sale or transfer and, indeed, the New York legislature deliberately eliminated any "presumption of sale" from the possession of larger quantities of narcotics. *See* § 1751, N.Y. Penal Law (repealed).

█ But appellant's argument proves both too much and too little. Too much, in the sense that, by accepting appellant's own premise that narcotics such as heroin and cocaine are generally marketed in mixtures or compounds, it does not seem unreasonable or irrational for a legislature to deal realistically with the marketing of the mixture or compound rather than the handling of the pure narcotic. Too little, in the sense that while it may not be wise to let the possessor of the pure or a purer product escape with a lighter penalty than that going to the possessor of the drug in its ordinary marketable form, it is not necessary for a legislature to attempt to eradicate all evil, but only part of it; as the Court said in Pennsylvania v. Ashe, 302 U.S. 51, 55, 58 S.Ct. 59, 60, 82 L.Ed. 43 (1937), "The comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for [the state's] determination."

█ No doubt the New York legislature, when it adopted the statutory scheme here in question in 1965, had in mind a more flexible pattern of handling drug offenses than that used by the United States[4] or other states at that time, considering that possessors of greater quantities of drugs should be punished more seriously because they are more likely to be dealers or to be capable of becoming such than possessors of smaller quantities, or because the greater quantities present a greater threat to society. Certainly to this extent the legislation cannot be treated as irrational. Taking the additional knowledge that heroin and cocaine at least are generally marketed in a diluted or impure state, the rationale of striking at the mixture or compound rather than at the pure quantity involved becomes evident: the possessor of 50 "bags" of five per cent pure heroin should arguably be punished no differently from a possessor of 50 bags with 10 per cent pure heroin. The State cannot be expected to make gradations and differentiations and draw distinctions and degrees so fine as to treat all law violators with the precision of a computer; at the time the New York scheme of punishment was initially proposed in the mid 1960's, it represented probably the most advanced thinking in the country on the difficult and complex question of penalizing trafficking in narcotic drugs in an urban society.

---

4. *See, e. g.*, United States v. Haynes, 398 F. 2d 980, 987 (2d Cir. 1968) (federal narcotics laws draw no distinctions based on quantity of heroin in substance or total quantity of mixture).

To be sure appellant has put to us some extreme cases where literal application of the statutes could cause some rather remarkably unjust results, particularly with the new (but for purposes of this case irrelevant) New York statute making conviction of a class A-1 drug felony subject to a mandatory life sentence. One such example relates to the use of methadone, where a daily dose in methadone programs may consist of two tablets weighing 80 milligrams or the same substance in a two-ounce juice mixture. To the extent these extreme cases are not themselves handled by prosecutorial discretion,[5] the rulings of the New York courts, or the exercise of more perspicacious legislative insight, we leave their resolution to the day they are presented to us. Suffice it to say in the case of heroin and cocaine possession offenses we do not view the New York statutes that were applied in this case unconstitutional on their face.[6]

■ Appellant's argument under the eighth amendment's prohibition of cruel and unusual punishment, to the extent that it duplicates his argument under the fourteenth, is rejected for the same reasons as is his equal protection or due process claim, again leaving any questions under the 1973 revision of the New York statutes unanswered. To the extent that this eighth amendment claim is independent of the fourteenth amendment claims, it was apparently never properly raised before the state courts and is therefore not within our jurisdiction to decide. Picard v. Connor, *supra.*

Affirmed.

---

5. *See* N.Y. Times, June 19, 1974, at 1, col. 2 (city ed.) (certain New York prosecutors agree to prosecute "low-level" methadone offenders under the misdemeanor sections of the New York statutes to assure "humane and rational dispositions" for reformed heroin addicts).

6. So, too, we leave until another day any determination with reference to the 1973 New York statutes which, *inter alia*, escalated the penalty for possession and sale in relation to the quantity of drug mixture involved. *See* N.Y. Penal Law, art. 220, Hechtman, Supp. Practice Commentary 6 (1973–74 Cum. Ann.Pkt.Pt.).