**James Edison SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00865–CR.**

Court of Appeals of Texas,
Dallas.

Sept. 28, 1987.

Robert T. Baskett, Dallas, for appellant.

Gary A. Moore, Dallas, for appellee.

Before STEPHENS, HECHT and THOMAS, JJ.

HECHT, Justice.

The trial court found James Edison Smith guilty of possession with intent to deliver cocaine, a controlled substance, and sentenced him to 30 years' imprisonment. For reasons that follow, we affirm the trial court's judgment.

I

Smith first complains that the trial court erroneously admitted evidence seized

under a search warrant obtained upon false information. The search warrant was issued upon information from a confidential informant recited in a police officer's affidavit. The statement in the affidavit that Smith says is false is:

> the informant has given information on prior occasions in the past involving drug trafficking in Dallas County, and on each and every occasion said confidential informant has proven to be true, reliable, and correct.

When the informant gave the police officer information about Smith, it was the first time he had ever given police information. At that same time, however, he also told the officer about two other known drug dealers and their activities, which the officer verified. Smith argues that "prior occasions in the past" means separate conversations at discrete intervals prior to the occasion Smith was discussed. The words themselves cannot be so strictly limited. The statement in the affidavit was literally true: on two occasions, one as to one drug dealer and the second as to another drug dealer, both in the same conversation in the past, prior to the officer's making the affidavit, the informant gave information involving drug trafficking in Dallas County, and on both those occasions the informant proved to be true, reliable, and correct. Moreover, the statement also fulfilled the necessary purpose of showing the informant's reliability.

The search warrant was properly issued. It follows that the evidence seized under the warrant was properly admitted. Smith's first point of error is therefore overruled.

1. Tex.Rev.Civ.Stat.Ann. art. 4476–15 (Vernon Supp.1987) ("the Act"). Unless otherwise noted, all statutory references are to this Act.

2. Sections 4.03–4.032.

3. Section 4.02(b)(3)(D).

4. Section 4.03(b).

## II

Smith was convicted of possessing, with intent to deliver, a powdery substance that weighed a total of 1331.09 grams, of which only 349.51 grams was pure cocaine. Although Smith was thus found in possession of less than 400 grams of pure controlled substance, he was sentenced under section 4.03(d)(3) of the Texas Controlled Substances Act[1] for possession with intent to deliver a controlled substance with an "aggregate weight, including any adulterants or dilutants, [of] 400 grams or more." In his second point of error Smith contends that he should have been punished only for the pure controlled substance, and not the total substance, he possessed. Smith argues that section 4.03(d)(3) is unconstitutional because it sets a range of punishment based upon the aggregate weight of controlled substance and other material. Inasmuch as section 4.03(d)(3) is part of a uniform statutory scheme that sets punishment ranges based upon the aggregate weight of the controlled substance "including adulterants or dilutants", Smith's argument in effect challenges the constitutionality of the punishment scheme of the entire Act.

The range of punishment for the offense of possession with intent to deliver a controlled substance depends upon the type of substance and its "aggregate weight, including any adulterants or dilutants".[2] If the substance is listed in Penalty Group 1, as cocaine is,[3] the offense is a first degree felony.[4] If the aggregate weight of the substance, including adulterants or dilutants, is 28 grams or more, the offense is aggravated.[5] The range of punishment for the offense is:[6]

5. Section 4.03(c).

6. Sections 4.01(b)(1), 4.03(d)(1)–(3).

| Aggregate Weight | Minimum Sentence | Maximum Sentence |
|---|---|---|
| Less than 28 grams | 5 years | 99 years or life + fine not to exceed $20,000 |
| 28 grams or more but less than 200 grams | 5 years | 99 years or life + fine not to exceed $50,000 |
| 200 grams or more but less than 400 grams | 10 years | 99 years or life + fine not to exceed $100,000 |
| more than 400 grams | 15 years | 99 years or life + fine not to exceed $250,000 |

In each case aggregate weight includes any adulterants or dilutants.

Smith appears to make three separate arguments as to why this statutory punishment scheme in general, and section 4.03(d)(3) in particular, are unconstitutional.

## A

■ First, Smith argues that the Act is unconstitutionally vague because it does not define "adulterants" and "dilutants". A statute is unconstitutionally vague if it either "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," or "encourages arbitrary and erratic arrests and convictions." *Cotton v. State*, 686 S.W.2d 140, 141 (Tex.Crim.App.1985). Smith does not claim, and we find no basis to conclude, that the use of the words "adulterants" and "dilutants" in the Act encourages arbitrary and erratic arrests and convictions. The remaining question, then, is whether the Act gives fair notice of the conduct it forbids.

Whether the Act gives fair notice of its prohibitions depends upon whether the meanings of the words in question can reasonably be ascertained by persons of ordinary intelligence. Words in statutes are to be given any special meanings they have acquired, whether by legislative definition or technical usage. Tex. Gov't Code Ann. § 311.011(b) (Vernon Supp.1987). Common words not defined by statute are given their ordinary meanings. Tex. Gov't

Code Ann. § 311.011(a) (Vernon Supp. 1987); *Big H Auto Auction, Inc. v. Saenz Motors*, 665 S.W.2d 756, 758 (Tex.1984); *Morter v. State*, 551 S.W.2d 715, 718 (Tex. Crim.App.1977); *Wade v. City of Garland*, 671 S.W.2d 657, 659 (Tex.App.—Dallas 1984, writ dism'd).

The meanings of "adulterant" and "dilutant" are simple and clear. The Act itself suggests their meanings when it defines "drug paraphernalia" to include:

a diluent [7] or adulterant, such as quinine hydrochloride, mannitol, mannite, dextrose, or lactose, used or intended for use in cutting a controlled substance.... [8]

To "cut" means to "reduce the concentration or strength of". Webster's Third New International Dictionary 560 (1981). Thus, the Act indicates that an "adulterant" or "dilutant" is something used to reduce the concentration or strength of a controlled substance. This indication is consistent with the dictionary definition of "adulterant"—something which reduces the purity of a substance—and "dilutant"—something which reduces the concentration of a substance. *Id.* at 30, 633; *see McGlothlin v. State*, 705 S.W.2d 851, 864 (Tex.App.—Fort Worth 1986, pet. granted). The special meanings the words have acquired are the same as their ordinary meanings. *See Engelking v. State*, 727 S.W.2d 694, 699–700 (Tex.App.—Houston [1st Dist.] 1987, pet. granted) (Levy, J., dissenting).

■ Smith argues that the Act is vague because it does not require that adulterants

7. "Diluent" and "dilutant" are different spellings of the same word and are used interchangeably.

8. Section 1.02(14)(F).

or dilutants actually be mixed with a controlled substance to be considered as part of its aggregate weight. The Act sets the punishment range based upon "the amount of the controlled substance possessed ..., by aggregate weight, including any adulterants or dilutants." "Including" plainly means "mixed with". *See* Webster's, *supra,* at 1143. The Act does not suggest that adulterants or dilutants kept separate from a controlled substance can be included in the aggregate weight of the controlled substance for purposes of determining punishment.[9]

In light of the unambiguous meanings of "adulterant" and "dilutant", the Act sets the range of punishment based upon the aggregate weight of the substance possessed, including anything which reduces its purity or concentration. This is fair notice to persons of ordinary intelligence. *See Engelking v. State,* 727 S.W.2d 694, 696 (Tex.App.—Houston [1st Dist.] 1987, pet. granted). Consequently, we conclude that the use of the words "adulterants" and "dilutants" in the Act does not make it unconstitutionally vague.

### B

■ Smith's brief may also argue, albeit vaguely, that the Act violates constitutional due process and equal protection requirements by basing ranges of punishment upon aggregate weights of controlled substances that include adulterants and dilutants. In the interest of justice we address these issues as well.

Constitutional due process and equal protection both require that there be a rational basis for the punishment classifications set by the Legislature in the Act. *United States ex rel. Daneff v. Henderson,* 501 F.2d 1180, 1183 (2d Cir.1974). The Legislature has considerable leeway to enact laws that appear to affect similarly situated people differently. *Clark v. State,* 665 S.W.2d 476, 480 (Tex.Crim.App.1984).

Certainly, the Legislature could rationally conclude that possession of greater amounts of controlled substances should be punished more severely than possession of lesser amounts. The greater the amount of illicit drugs possessed, the more likely use is widespread and delivery to others is intended, and the greater the harm to society. *Daneff,* 501 F.2d at 1184.

The Legislature could also consider the fact that illicit drugs are generally marketed in a diluted state and punish possession of such drugs as sold, rather than in their pure state. According to the evidence of this case, cocaine sold on the street is usually only 20%–50% pure. It is not irrational to set the same range of punishment for possession of 400 grams of 30% pure cocaine and possession of 400 grams of 40% pure cocaine.

> The State cannot be expected to make gradations and differentiations and draw distinctions and degrees so fine as to treat all violators with the precision of a computer.

*Id.*

■ Smith nevertheless argues that hypothetically under the Act, a person convicted of possession with intent to deliver a microscopic amount of a controlled substance mixed with 400 grams of some other material could not be sentenced to less than 15 years' imprisonment, while a person convicted of possession with intent to deliver 27 grams of the pure drug could be sentenced to as little as 5 years' imprisonment. Moreover, a person sentenced to more than 10 years' imprisonment is not eligible for probation. Tex.Code Crim. Proc. art. 42.12, §§ 3, 3a (Vernon Supp. 1987). Smith argues that such a result would be highly unjust, and that the possibility it might occur renders the Act unconstitutional. Smith's argument fails for two reasons.

First, the Constitution does not require that punishment classifications established

---

**9.** This is not to say, of course, that separate possession of adulterants or dilutants cannot be punished by the Act. Section 4.07. *See infra* notes 11–12 and accompanying text.

by the Legislature guarantee that every lawbreaker will invariably be punished according to some perception of the relative gravity of his offense.

> [W]hile it may not be wise to let the possessor of the pure or a purer product escape with a lighter penalty than that going to the possessor of the drug in its ordinary marketable form, it is not necessary for a legislature to attempt to eradicate all evil, but only part of it; as the Court said in *Pennsylvania v. Ashe,* 302 U.S. 51, 55 [58 S.Ct. 59, 60, 82 L.Ed. 43] ... (1937), "The comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for [the state's] determination."

*Daneff,* 501 F.2d at 1184. Due process and equal protection require only that legal categorizations of offenses and punishments be rational. Generally rational distinctions do not become irrational because they fail to account for highly improbable possibilities, like Smith's hypothetical. The Constitution requires rational distinctions, not perfect ones.

Second, we need not speculate here whether a case could ever arise in which the punishment imposed under the Act was so unjust and so irrational as to violate constitutional requirements. This is not such a case.[10] Smith's 30–year sentence for possession with intent to deliver 349.51 grams of pure cocaine mixed with another 981.58 grams of adulterants and dilutants is not unconstitutional.

Finally, we note that similar punishment categories for controlled substance offenses in other jurisdictions have withstood the same constitutional challenge Smith makes here in every reported decision of which we are aware. *U.S. ex rel. Daneff v.*

*Henderson,* 501 F.2d 1180, 1183–1185 (2d Cir.1974); *Traylor v. Delaware,* 458 A.2d 1170, 1176–1177 (Del.1982); *Florida v. Yu,* 400 So.2d 762 (Fla.1981); *Lavelle v. Georgia,* 250 Ga. 224, 297 S.E.2d 234 (1982); *Illinois v. Mayberry,* 63 Ill.2d 1, 345 N.E.2d 97 (Ill.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976); *Lawhorn v. Indiana,* 452 N.E.2d 915, 917–918 (Ind. 1983); *Massachusetts v. Beverly,* 389 Mass. 866, 452 N.E.2d 1112, 1114–1115 (1983); *Michigan v. Lemble,* 103 Mich.App. 220, 303 N.W.2d 191 (1981); *New York v. La Porta,* 56 A.D.2d 983, 393 N.Y.S.2d 118 (1977); *North Carolina v. Perry,* 316 N.C. 87, 340 S.E.2d 450, 459–460 (1986).

Accordingly, we conclude that Smith was not denied due process or equal protection of the law by the punishment imposed upon him.

### C

■ Finally, Smith argues that because the statute does not prohibit possession of adulterants or dilutants, it cannot constitutionally set punishment based upon such substances. Both the premise and the conclusion of Smith's argument are incorrect.

In the first place, the Act defines adulterants and dilutants as drug paraphernalia [11], and forbids the use of drug paraphernalia, or the possession of drug paraphernalia with intent to use it, in connection with a controlled substance.[12] Thus, Smith is simply incorrect when he argues that the law does not make possession of adulterants or dilutants a criminal offense.[13]

Even if possession of adulterants and dilutants of controlled substances were not illegal, there would still be no constitutional infirmity in setting the range of punishment based upon the mixture of controlled

---

**10.** Although the court in *McGlothlin v. State,* 705 S.W.2d 851, 865 (Tex.App.—Fort Worth 1986, pet. granted), also concluded that it was not necessary to adjudicate hypothetical cases, it went on to venture that the possibility argued in that case, similar to the one Smith poses in this case, would be unconstitutional. We offer no opinion on whether Smith's hypothetical case would or would not pass constitutional muster.

**11.** Section 1.02(14)(F).

**12.** Section 4.07.

**13.** Smith also argues, also incorrectly, that the Act does not require that possession of adulterants or dilutants be knowing. Section 4.07.

substances with adulterants and dilutants. The legislature may punish illicit possession of drugs the way it illicitly occurs, and need not treat it as if it occurred in a laboratory. *See* part B, *supra.*

## D

Neither the Act generally nor section 4.03(d)(3) specifically is unconstitutional in the circumstances of this case. Smith's second point of error is therefore overruled.

## III

 Smith argues that the trial court erroneously permitted a police officer to testify about statements Smith made after he was arrested but before he was advised of his rights.[14] Specifically, the officer testified that he found a briefcase in the hotel room where Smith was arrested and asked Smith whom it belonged to. The officer testified that Smith claimed to own the briefcase, and that when he asked Smith for the combination to the lock, Smith gave it to him. The briefcase contained a small amount of cocaine, over $7,000 in cash, and records apparently referring to drug transactions.

As a general rule, a statement made by an accused during a custodial interrogation before he has been warned of his rights is inadmissible. Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1965); *Jimmerson v. State*, 561 S.W.2d 5, 8 (Tex.Crim.App.1978); *Easley v. State*, 493 S.W.2d 199 (Tex.Crim. App.1973), *on remand*, 529 S.W.2d 522 (Tex.Crim.App.1975). The rule does not apply to "a statement that is the res gestae of the arrest or of the offense". Tex.Code Crim.Proc.Ann. art. 38.22, § 5 (Vernon 1965); *see, e.g., Brown v. State*, 477 S.W.2d 617, 622 (Tex.Crim.App.1972); *Lewis v. State*, 630 S.W.2d 285 (Tex.App.—Houston [14th Dist.] 1981). A res gestae statement is a statement made in response to a star-

tling event, spontaneously or impulsively, without time for reflection or contrivance. *Graham v. State*, 486 S.W.2d 92, 94–95 (Tex.Crim.App.1972); *Jolly v. State*, 681 S.W.2d 689 (Tex.App.—Houston [14th Dist.] 1984, pet. granted). An arrest may be the startling event. *See, e.g., Gordon v. State*, 608 S.W.2d 638 (Tex.Crim.App.1980). A res gestae statement can be made in response to an inquiry. *Miles v. State*, 488 S.W.2d 790 (Tex.Crim.App.1972); *Jones v. State*, 458 S.W.2d 654 (Tex.Crim.App.1970); *Kelley v. State*, 631 S.W.2d 235 (Tex.App. —Fort Worth 1982).

Whether a statement is admissible as res gestae depends upon the circumstances of each case. *Patterson v. State*, 458 S.W.2d 658, 660 (Tex.Crim.App.1970). In this case eight police officers burst into the hotel room where Smith and two companions were preparing to freebase cocaine. Seconds later the trio was arrested and handcuffed, as the officers began to search the room. Within minutes the briefcase was discovered, and Smith admitted he owned it. Under these circumstances we conclude that Smith's statements were excited and spontaneous, not reflective or contrived, made in response to the surprising arrival of police at the hotel room, and therefore res gestae. Accordingly, the trial court did not err in admitting evidence of Smith's statements.

 Even if Smith's statements were not res gestae, admission of evidence about them was harmless error.

Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove.

*Anderson v. State*, 717 S.W.2d 622, 628 (Tex.Crim.App.1986). Smith's statements served only to show his ownership of the briefcase, which was established by its contents: Smith's voter registration card, cred-

---

14. Although there is some confusion in the record as to whether Smith was advised of his rights before he made the statements in issue, the State does not contest Smith's assertion on appeal that he was not, and we assume he was not.

it card and identification card, and a leather calendar book monogrammed with Smith's initials and containing the statement, "if found please return to James E. Smith".

Smith's third point of error is therefore overruled.

## IV

■ Finally, Smith contends that the evidence is insufficient to convict him of possession with intent to deliver more than 400 grams of cocaine. Evidence is sufficient for conviction if it appears from the evidence most favorable to the verdict that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sutherlin v. State,* 682 S.W.2d 546, 548–549 (Tex.Crim.App. 1984); *Jackson v. State,* 672 S.W.2d 801 (Tex.Crim.App.1984); *Faggett v. State,* 673 S.W.2d 700 (Tex.App.—Dallas 1974, pet. ref'd).

■ The court of criminal appeals has only very recently restated the principles for proving possession of a controlled substance. *Humason v. State,* 728 S.W.2d 363, 365 (Tex.Crim.App.1987). The State must prove beyond a reasonable doubt that a defendant intentionally or knowingly exercised actual care, control, custody or management over the contraband, knowing that it was contraband. Showing a defendant to have been in the vicinity of contraband is not enough. The State must prove an affirmative link between the defendant and the contraband showing both control and knowledge. Proof may be based upon circumstantial evidence which, to a moral certainty, excludes every reasonable hypothesis other than guilt.

■ Intent to deliver may also be proved by circumstantial evidence, such as the quantity of drug possessed, the manner of packaging, and the presence of large amounts of money. *Branch v. State,* 599 S.W.2d 324, 325 (Tex.Crim.App.1979) (original opinion reversed on rehearing on other grounds); *Vasquez v. State,* 699 S.W.2d

294, 296 (Tex.App.—Houston [14th Dist.] 1985); *Hawkins v. State,* 687 S.W.2d 48 (Tex.App.—Dallas 1985, pet. ref'd); *Turner v. State,* 681 S.W.2d 849 (Tex.App.—Dallas 1984, pet. ref'd). Additional factors are whether defendant is himself a drug user, and whether there are records or other evidence of drug transactions present.

The evidence most favorable to the verdict reflects that eight police officers entered suddenly into a hotel room where they found Smith and two companions preparing to freebase cocaine. In the room officers found Smith's briefcase which contained a small amount of cocaine, $7,000 cash, and records of drug transactions. The officers also found $2,000 cash on a nightstand, several uncashed checks payable to Smith, a blue nylon bag, pouch, and two Tupperware bowls containing a total of 1331.09 grams of powder of which 349.51 grams were pure cocaine, a postcard addressed to Smith, a scale to weigh drugs, and several pieces of drug paraphernalia.

Although the hotel room was registered in the name of another person, and two other persons were present in the room, there were ample links between Smith and the cocaine in his briefcase and throughout the room. The presence of a very large amount of cocaine in bulk containers, a very large amount of money including checks, and records of drug transactions in Smith's briefcase is sufficient to prove beyond a reasonable doubt that Smith possessed the cocaine found in the room and that he intended to deliver it to others. Smith's fourth point of error is accordingly overruled.