TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00674-CR







Joe Scroggins, Appellant


v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 99-741-K368, HONORABLE BURT CARNES, JUDGE PRESIDING





 Joe Scroggins appeals convictions for two counts of possession of controlled
substances with intent to deliver and one count of possession of marihuana. See Tex. Health &
Safety Code Ann. §§ 481.112, .121 (West Supp. 2001). Scroggins was tried before a jury and
sentenced to fifty years' imprisonment for both counts of possession of controlled substances and
confinement in a state jail facility for two years for possession of marihuana. In this appeal,
Scroggins alleges five points of error. We determine that the trial court committed no reversible
error and affirm the judgment of conviction.


FACTUAL BACKGROUND The Round Rock Police Department obtained a warrant to search Scroggins's house
after conducting a "controlled buy" from Scroggins using a confidential informer on July 8, 1999. 
Police found Scroggins, Kim Farmer, John Tabor, Brandy Hansen, Don Clark, and Farmer's two
children inside the house when they conducted their search. Police Sergeant James Stuart testified
that Farmer and the two children were in the living room, and the other adults were in the bedroom
and bathroom area. When police entered the bedroom and bathroom area, they observed a large rock
of methamphetamine, a scale, a mirror, a playing card, a spoon, straws, and some lines of
methamphetamine on a counter outside of the bathroom. The rock and the lines of
methamphetamine together weighed 26.64 grams. After Hansen exited the bathroom, police found
a smaller rock of methamphetamine in the bathtub weighing 3.48 grams. Police found a wooden tray
with 0.84 ounces of marihuana and marihuana paraphernalia on a nightstand in the bedroom, a tin
with marihuana stems and seeds, a cigarette box with razorblades in it, a bank bag containing drug
paraphernalia and three vials of cocaine totaling 0.57 grams, unused baggies typically used for
packaging drugs, a bag containing 10.78 ounces of marihuana, a tin containing 1.44 grams of
cocaine, and another tin containing ten packets of cocaine totaling 5.26 grams and $520 in cash. 
Police also found 1.05 ounces of marihuana on Tabor and a cigarette pack under Tabor that
contained eight baggies of methamphetamine with a net weight of 1.83 grams.

DISCUSSION

Identity of the Confidential Informer

 Scroggins argues in his first point of error that the trial court abused its discretion by
refusing to grant Scroggins's motion for discovery of the identity of the confidential informer. The
State of Texas has a privilege to refuse to disclose the identity of a person who has furnished
information relating to or assisting a law enforcement officer in an investigation of a possible
violation of a law. Tex. R. Evid. 508(a). A court may require the identity of an informer to be
disclosed, however, if the information from the informer is relied upon to establish the legality of
the means by which evidence was obtained and the court is not satisfied that the information was
received from an informer reasonably believed to be reliable or credible. Id. 508(c)(3). The
defendant has the threshold burden of demonstrating that identity must be disclosed. Bodin v. State,
807 S.W.2d 313, 318 (Tex. Crim. App. 1991). The mere filing of a Rule 508 motion is insufficient
to obtain a hearing, much less compel disclosure. Id. Because the defendant often will not know
the nature of the informer's testimony, the defendant is only required to make a plausible showing
of how the informer's information may be important. See id. (citing United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)).

 In reviewing the trial court record, we find no motion for discovery of the informer's
identity, nor do we find evidence presented to make a plausible showing of how the informer's
information may be important. On the record, the defendant made three separate references to the
informer's identity. First, the defendant requested a transcript of the tape with the name of the
informer redacted. The trial court denied that request. The second reference came during the cross-examination of Sergeant Stuart, when Scroggins's attorney asked, "Who was that confidential
source?" The prosecuting attorney objected to Scroggins's inquiring into the identity of the
informer, and Scroggins's attorney replied, "He brought it up." The third reference came during the
punishment phase of trial when the defendant twice asserted that he did not intend to uncover the
informer's identity through cross-examination. At no time did the defendant specifically request
disclosure of the informer's identity or explain why such disclosure was necessary to Scroggins's
case. Scroggins did not meet the threshold burden during trial of demonstrating that identity must
be disclosed, and his only request for disclosure of the informer's identity comes in his brief before
this Court. We therefore overrule Scroggins's first point of error.

Examination of the Audio Tape

 In Scroggins's second point of error, he asserts that the trial court abused its discretion
in refusing to grant his motion to examine the tape of the July 8, 1999 conversation between the
confidential informer and Scroggins. The Texas Code of Criminal Procedure gives the trial court
discretion to grant or refuse discovery of materials requested from the State by the defendant. Tex.
Code Crim. Proc. Ann. art. 39.14(a) (West Supp. 2001). Texas has chosen to follow a rule that
requires the trial court to permit discovery only if the evidence sought is material to the defense of
the accused. Quinones v. State, 592 S.W.2d 933, 941 (Tex. Crim. App. 1980).

 Scroggins requested an opportunity to review the July 8 tape, but later he agreed to
the trial court's proposal to conduct an in camera review of the tape to determine whether there was
any audible material on it. The record does not indicate whether the trial court reached a
determination of the tape's relevance. No ruling was made on the request, and Scroggins did not
seek a ruling; thus, any error was not preserved for purposes of this appeal. See Darty v. State, 709
S.W.2d 652, 655 (Tex. Crim. App. 1986).

 Moreover, the trial court did not abuse its discretion by denying Scroggins's request
to examine the tape of the July 8 conversation. The State provided uncontroverted testimony that
law enforcement officials attempted to record the July 8 conversation, but that nothing was actually
recorded on the tape because the recording equipment malfunctioned. Scroggins argues that the trial
judge's letter of August 9, 2000, in which he summarizes his examination of a tape and partial
transcript, shows that at least some of the July 8 conversation was recorded; however, Scroggins
confuses the tape of the July 8 conversation with the tape of a December 31, 1999 conversation
between Scroggins and an informer. The tape the trial judge referred to in the August 9, 2000 letter
and that the judge examined and ordered sealed is apparently the tape of the December 31
conversation, which is included in the record. There is no evidence that the trial court examined the
tape of the July 8 conversation, and the July 8 tape was not included in the record provided to this
Court. Because all evidence shows that the tape of the July 8 conversation between the informer and
Scroggins yielded no record of the conversation, Scroggins failed to demonstrate its relevance to his
defense. See Quinones, 592 S.W.2d at 941. Because we determine that there was no abuse of
discretion and that any error was not preserved, we overrule Scroggins's second point of error. (1)


Lesser-Included Offense Instruction

 Scroggins requested a lesser-included charge of possession of less than one gram of
methamphetamine, but the trial court denied the request. A defendant is entitled to an instruction
on a lesser-included offense if there is evidence that would permit the jury rationally to find that, if
the defendant is guilty, he is guilty only of the lesser offense. Rousseau v. State, 855 S.W.2d 666,
672-73 (Tex. Crim. App. 1993). A court must charge the jury on a lesser offense in addition to the
charged offense if (1) proof of the lesser offense is included within the proof necessary to establish
the offense charged and (2) some evidence exists in the record that would permit a jury rationally
to find the defendant guilty, if at all, of only the lesser offense. See id. at 673. If there was error in
the charge and the error was the subject of a timely objection in the trial court, then reversal is
required if the error is "calculated to injure the rights of defendant," which means no more than some
harm must result from the error. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). 
Before applying a harm analysis, an appellate court must find error in the jury charge. See Posey v.
State, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998) (referencing Almanza, 686 S.W.2d at 174).

 Police testimony shows that three separate amounts of methamphetamine were found
in the house: 26.64 grams of lines and a rock by the bathroom sink, a 3.48 gram rock in the bathtub,
and 1.83 grams in several packets under Tabor. Scroggins argues that a jury could have reasonably
found him in possession of less than one gram based on the fact that evidence was offered that
Scroggins is a methamphetamine user, and such users typically use less than one gram at a sitting. 
Scroggins also argues that the jury could have found that he possessed one of the individual packets
of methamphetamine found under Tabor. Anything more than a scintilla of evidence is sufficient
to entitle a defendant to a lesser charge; however, there must be some evidence directly germane to
a lesser included offense for the fact-finder to consider before an instruction on a lesser included
offense is warranted. Bignall v. State, 887 S.W.2d 21, 23-24 (Tex. Crim. App. 1994).

 We determine that there is no evidence that Scroggins possessed less than one gram
of methamphetamine. Testimony offered by Sergeant Stuart that most methamphetamine users he
comes into contact with use "a gram, maybe two grams at the most" is not evidence to prove that
Scroggins, as a methamphetamine user, had possession of less than one gram of methamphetamine. 
There is no evidence that Scroggins actually used less than one gram. Furthermore, there is no
evidence that Scroggins possessed only some of the packets of methamphetamine found under
Tabor. It would be wholly illogical, based on the evidence presented, to find that Scroggins
possessed one or more of the packets found under Tabor but that he did not possess all of the packets
found under Tabor or one or both quantities of methamphetamine found in the bathroom area. Thus,
there is no evidence that would permit a jury rationally to find the defendant guilty, if at all, of only
the lesser offense. See Rousseau, 855 S.W.2d at 672-73. Accordingly, we conclude that the trial
court's denial of Scroggins's request for the lesser-included offense of possession of less than one
gram of methamphetamine was not erroneous, and we overrule Scroggins's third point of error.


Motion for Mistrial

 Scroggins argues that the trial court abused its discretion in refusing to grant a mistrial
following Sergeant Stuart's testimony that there was a pornographic video playing on the television
in Scroggins's house when the police arrived. Scroggins posits that residents of Williamson County
tend to be conservative and have a strong local bias against pornographic videos. Scroggins
contends that the police officer's statement about the video was intended to inflame the jury; thus,
a mistrial was necessary. The issue before us is whether the trial court erred in refusing to grant a
mistrial in the face of the trial court's instruction to the jury to disregard that statement.

 It has long been settled that 


error in admitting improper evidence may be generally corrected by a withdrawal and
an instruction to disregard it except in extreme cases where it appears that the
evidence is clearly calculated to inflame the minds of the jury and is of such character
as to suggest the impossibility of withdrawing the impression produced on their
minds.



Harris v. State, 375 S.W.2d 310, 311 (Tex. Crim. App. 1964). In the instant case, Sergeant Stuart
stated that he "noticed there was a television playing a pornographic movie" as he described what
was going on in Scroggins's house when he arrived. The trial court told the prosecutor to refrain
from mentioning the television and instructed the jury to "please disregard the response concerning
what was playing on TV." Although Sergeant Stuart's statement may be somewhat prejudicial, there
is nothing to suggest that it was clearly calculated to inflame the minds of the jury, and it is not of
such character as to suggest the impossibility of withdrawing the impression produced on their
minds. See id. Additionally, we note that Scroggins's attorney himself revisited the issue when he
later asked Sergeant Stuart two questions regarding the television, and specifically asked, "And so
the movie was being played on that TV?" Given the trial court's curative instruction to the jury and
defense counsel's later references to the television, we overrule Scroggins's fourth point of error.


Sufficiency of the Evidence

 Scroggins argues that the evidence presented is both legally and factually insufficient
to support his convictions in this case. We will first examine Scroggins's claim of legal
insufficiency. A legal sufficiency review calls upon the reviewing court to view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). A
person commits an offense if the person knowingly or intentionally manufactures, delivers, or
possesses with intent to manufacture or deliver a controlled substance. Tex. Health & Safety Code
Ann. § 481.112(a). The State had to prove that Scroggins knowingly or intentionally possessed
methamphetamine and cocaine with intent to deliver. Scroggins argues that the State failed to
provide sufficient evidence to prove an affirmative link between himself and the drugs, and that the
State failed to prove his intent to deliver. We will examine the evidence in the light most favorable
to the verdict to determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. See Johnson, 23 S.W.3d at 7.

 When the accused is not in exclusive control of the place where the substance is
found, it cannot be concluded that the accused had knowledge and control over the contraband unless
there are additional independent facts and circumstances that affirmatively link the accused to the
contraband. Wiersing v. State, 571 S.W.2d 188, 190 (Tex. Crim. App. 1978). The State offered
evidence that Scroggins lived at the residence at 1011 Ridgemont, that police had been observing
unusual traffic patterns at the home for three or four months prior to the offenses, that some people
who frequented the house had possession of drugs when they left the house, and that the drugs and
drug paraphernalia were out in the open when police executed the search warrant. We determine that
this evidence is legally sufficient to establish an affirmative link between Scroggins and the drugs
found in the house.

 Intent to deliver may be proven by circumstantial evidence, such as the quantity of
drugs possessed, the manner of packaging, and large amounts of money. Smith v. State, 737 S.W.2d
933, 941 (Tex. App.--Dallas 1987, pet. ref'd). The State presented evidence that the amount of
methamphetamine found in Scroggins's possession was more than a user would typically have, and
that both methamphetamine and cocaine were packaged in eighteen separate baggies, which Sergeant
Stuart testified is more indicative of drug sales than personal use. The State also showed that
Scroggins possessed several baggies that had never been used, and that a drug dealer would typically
have those on hand, but a drug user would not. The State offered evidence that $520 in cash was
discovered in a tin containing ten packets of cocaine. Although Scroggins argues that all of this
evidence does not prove his intent to sell, we determine that a jury could find intent to deliver. It is
not necessary to find that Scroggins intended to receive money in exchange for drugs to find intent
to deliver; any transfer, actually or constructively, of a controlled substance to another is sufficient
for finding delivery even in the absence of payment. See Tex. Health & Safety Code Ann. §
481.002(8) (West Supp. 2001). Because intent to deliver may be proven by circumstantial evidence,
we conclude that the evidence discussed above is legally sufficient to prove that Scroggins intended
to deliver controlled substances. See Smith, 737 S.W.2d at 941.

 A factual sufficiency review dictates that the evidence be viewed in a neutral light,
favoring neither party. Johnson, 23 S.W.3d at 7. We will set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id. at 6-7
(citing Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). Based on the evidence
presented at trial, we cannot say that the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust; on the contrary, we conclude that the evidence that tends
to prove Scroggins's guilt outweighs any evidence which would disprove his guilt. See id. 
Scroggins argues that the absence of records of drug sales, photographs of drugs, or dilutants, and
the presence of user paraphernalia would tend to disprove his intent to deliver. Scroggins also argues
that the lack of any fingerprint evidence to directly link Scroggins to the drugs outweighs the
evidence that links him to the drugs. We conclude that the large quantities of drugs openly visible
in Scroggins's home, together with unused baggies, $520 in cash found in a tin containing cocaine,
and a scale all evidence Scroggins's possession and intent to deliver. The strength of this evidence
precludes us from concluding that the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Because we determine that the evidence is both legally
and factually sufficient, we overrule Scroggins's fifth point of error.


CONCLUSION

 We determine that Scroggins did not properly move for disclosure of the informer's
identity and that the alleged error was not preserved. Additionally, we hold that the trial court did
not err in refusing to grant Scroggins's motion to examine the audiotape of the July 8 conversation
between Scroggins and the informer, nor in refusing to grant the motion for the lesser-included
offense instruction, or in refusing to grant the motion for mistrial. We hold that the evidence is both
legally and factually sufficient to support the jury's verdict. Accordingly, we affirm the trial court's
judgment of conviction on all three counts.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: July 26, 2001

Do Not Publish

1. Scroggins also filed a motion to unseal the portion of the record ordered sealed by the
district court. The motion refers to the tape recording and its transcription that were examined by
the court. In subsequent correspondence with this Court, Scroggins has clarified his request: "[T]he
only tape to which we are interested in listening is that which was purportedly done on the afternoon
of Mr. Scroggins's arrest on July 8, 1999, referred to in RR Vol. 2, p. 29 at lines 5-11." Because we
have determined that there is no recording of the July 8 conversation, and that the tape recording and
transcription examined by the district court is of the December 31 conversation, we deny Scroggins's
"motion to unseal matters previously added in the clerk's record."


Scroggins possessed several baggies that had never been used, and that a drug dealer would typically
have those on hand, but a drug user would not. The State offered evidence that $520 in cash was
discovered in a tin containing ten packets of cocaine. Although Scroggins argues that all of this
evidence does not prove his intent to sell, we determine that a jury could find intent to deliver. It is
not necessary to find that Scroggins intended to receive money in exchange for drugs to find intent
to deliver; any transfer, actually or constructively, of a controlled substance to another is sufficient
for finding delivery even in the absence of payment. See Tex. Health & Safety Code Ann. §
481.002(8) (West Supp. 2001). Because intent to deliver may be proven by circumstantial evidence,
we conclude that the evidence discussed above is legally sufficient to prove that Scroggins intended
to deliver controlled substances. See Smith, 737 S.W.2d at 941.

 A factual sufficiency review dictates that the evidence be viewed in a neutral light,
favoring neither party. Johnson, 23 S.W.3d at 7. We will set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id. at 6-7
(citing Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). Based on the evidence
presented at trial, we cannot say that the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust; on the contrary, we conclude that the evidence that tends
to prove Scroggins's guilt outweighs any evidence which would disprove his guilt. See id. 
Scroggins argues that the absence of records of drug sales, photographs of drugs, or dilutants, and
the presence of user paraphernalia would tend to disprove his intent to deliver. Scroggins also argues
that the lack of any fingerprint evidence to directly link Scroggins to the drugs outweighs the
evidence that links him to the drugs. We conclude that the large quantities of drugs openly visible
in Scroggins's home, together with unused baggies, $520 in cash found in a tin containing cocaine,
and a scale all evidence Scroggins's possession and intent to deliver. The strength of this evidence
precludes us from concluding that the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Because we determine that the evidence is both legally
and factually sufficient, we overrule Scroggins's fifth point of error.


CONCLUSION

 We determine that Scroggins did not properly move for disclosure of the informer's
identity and that the alleged error was not preserved. Additionally, we hold that the trial court did
not err in refusing to grant Scroggins's motion to examine the audiotape of the July 8 conversation
between Scroggins and the informer, nor in refusing to grant the motion for the lesser-included
offense instruction, or in refusing to grant the motion for mistrial. We hold that the evidence is both
legally and factually sufficient to support the jury's verdict. Accordingly, we affirm the trial court's
judgment of conviction on all three counts.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: July 26, 2001

Do Not Publish

1. Scroggins also filed a motion to unseal the portion of the record ordered sealed by the
district court. The motion refers to the tape recording and its transcription that were examined by
the court. In subsequent correspondence with this Court, Scroggins has clarified his request: "[T]he
only tape to which we are