**Affirmed and Opinion Filed October 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00653-CR
### No. 05-13-00655-CR

**JESUS ANTONIO DE SANTIAGO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 401-83076-2011 & 401-83077-2011**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Francis

Jesus Antonio De Santiago appeals his convictions for possession with intent to deliver one gram or more but less than four grams of cocaine and the murder of Ashton Williams. After finding appellant guilty of both offenses and that he used or exhibited a deadly weapon during commission of Williams's murder, the jury assessed punishment at fifteen years and seventy-five years in prison, respectively.

In each case, appellant claims the evidence is legally insufficient to support his convictions because the State failed to prove he committed the offenses. Appellant specifically contends no reliable evidence establishes he drove the truck that struck Williams and no witness testified to seeing appellant deliver drugs. We affirm.

In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We do not engage in a second evaluation of the weight and credibility of the evidence but "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16−17 (Tex. Crim. App. 2007).

A person commits an offense if he knowingly possesses with intent to deliver one gram or more but less than four grams of cocaine. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) 481.112(c) (West 2010). Intent to deliver a controlled substance is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the accused. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). It may be established by circumstantial evidence, including the quantity of drugs possessed or the manner in which the drugs are packaged. *Smith v. State*, 737 S.W.2d 933, 941 (Tex. App.—Dallas 1987, pet. ref'd). A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). The indictments charged appellant with intentionally and knowingly (1) possessing, with intent to deliver, one gram or more but less than four grams of cocaine and (2) causing Williams's death by driving a motor vehicle over Williams and using or exhibiting a deadly weapon, a motor vehicle.

The record shows appellant and several witnesses lived at the Creek Walk Apartments in Plano. An African-American male known as J.J. told fourteen-year-old Roberto Trevizo he needed to talk to appellant. Trevizo delivered the message, then headed home. Later, Trevizo

heard gunshots and saw appellant running toward his white Ford Explorer. Trevizo and appellant both got in the vehicle, and appellant said he was looking for "the other black dude that was with J.J." Trevizo knew the "other black dude" was Williams because Williams was with J.J. when he asked Trevizo to deliver the message to appellant.

Appellant exited the apartment complex parking lot onto 16th Street. He then turned onto Alma Drive where he saw Williams. Trevizo said Williams was looking back and laughing at them as he ran away. Appellant followed him and drove into a field off Alma. He ran over Williams, then spun around, and hit him again. According to Trevizo, appellant ran over Williams about six times. Appellant stopped the truck and began walking toward Williams. When another car pulled in, appellant got back in the car and drove off.

Yamara Mendizabal was the manager of Creek Walk Apartments on September 19, 2011. Although appellant had previously lived with Alberto Gonzalez at the apartments, he leased an apartment for his wife and family a few weeks before Williams's death. After leaving work on the 19th, Mendizabal was putting her daughters in the car when she heard gunshots. A black man she did not recognize ran by her into a field. She then saw appellant driving a white Ford Explorer through the parking lot. Trevizo was in the passenger seat. They turned onto 16th Street, then right on Alma toward the field.

Stephenson and his wife were driving on Alma Drive when they saw a white SUV in a vacant lot "doing doughnuts." Stephenson then saw a person trying to get off the ground. He pulled into the lot and got out of his car. There were two people outside the SUV but they turned and got back in when they saw Stephenson. The SUV drove away, and Stephenson called 9-1-1.

The record also shows that once police suspected appellant was involved, they began monitoring appellant's apartment. Officer Kevin Gendron was on watch around four in the morning the day after Williams's death when a white Ford SUV approached. Appellant exited

–3–

the vehicle and made his way toward the apartment. Gendron identified himself, asked appellant for identification, and patted him down. Other officers arrived, and someone asked appellant if he had any drugs. Because appellant admitted having cocaine and some crack, they searched him and discovered a large plastic bag containing smaller plastic bags, $120 cash, white powder, and white rocks, which was later determined to contain 3.77 grams of cocaine. Gendron said the manner in which the drugs were packaged was consistent with drugs packaged for sale. Appellant was arrested for possession of a controlled substance.

Later that afternoon, Detective Mark McClendon went to interview appellant. The forty-five-minute interview was videotaped and admitted into evidence. McClendon first read appellant his Miranda rights. He then told appellant what information they had and asked him what happened; appellant said it was "a drug deal gone bad." According to appellant, two black guys called him about buying some drugs but got "real skiddish about the money." One guy grabbed the "two ounces of coke and ran away with [it]." Appellant got in his vehicle, chased Williams, caught him, and ran him over, "four, five, six, seven times."

Medical examiner William Rohr testified Williams's death was the result of blunt force injuries consistent with being run over by a motor vehicle. He sustained sixteen fractured ribs, abrasions, lung contusions, and maceration of the liver. DNA analyst Tisha Kacer testified a tissue sample from the underside of appellant's SUV was consistent with Williams's DNA profile and the probability of selecting an unrelated person at random who could be the source of the DNA profile was one in 6.868 sextillion.

Appellant took the stand and testified that after Williams stole the cocaine, he ran to his apartment and hid. He claimed he did not run Williams down and he lied to the police when he told them he did. He also claimed the cocaine he had on the night of his arrest was for his

–4–

personal consumption only. Nevertheless, he conceded he had been selling drugs for about four months at the time Williams died.

The jury was able to assess the credibility and demeanor of the witnesses who testified at trial, and most importantly, was able to assess appellant's credibility and demeanor when he gave his version of events. From the guilty verdict, it is clear that the jury rejected appellant's exculpatory explanations given at trial. *See Clayton*, 235 S.W.3d at 779. We conclude a rational juror could find, beyond a reasonable doubt, that appellant ran over Williams, causing his death, and that he possessed cocaine with intent to deliver. The evidence is legally sufficient to support his convictions.

We affirm the trial court's judgments.

Do Not Publish
TEX. R. APP. P. 47.2

130653F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESUS ANTONIO DE SANTIAGO,
Appellant

No. 05-13-00653-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-83076-2011.
Opinion delivered by Justice Francis,
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of October, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESUS ANTONIO DE SANTIAGO,
Appellant

No. 05-13-00655-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-83077-2011.
Opinion delivered by Justice Francis,
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of October, 2014.