# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00144-CR

**Patrick McPherson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. 9024262, HONORABLE JON N. WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After a jury found Patrick McPherson guilty of possession of one to four grams of cocaine with intent to deliver, the district court found that McPherson had two prior felony convictions and assessed sentence at six years in prison. *See* Tex. Health & Safety Code Ann. § 481.112(c) (West 2003). McPherson contends on appeal that the evidence is legally and factually insufficient to support his conviction, that he was denied effective assistance of counsel, and that the court erred by not striking testimony of a witness who prepared for trial by reviewing reports written by other witnesses. We will affirm the judgment.

### BACKGROUND

The witnesses at trial were all Austin Police Department officers and employees.

Officer Casey Gabriel purchased the drugs while working undercover. He testified he drove into a parking lot and was approached by two men in succession who inquired as to his needs. He told both that he was looking for a "20"—jargon for $20 worth of crack cocaine. The second man, Damond Fiske, told him to drive around to the back parking lot of the building. As Gabriel was approaching, he saw Fiske and McPherson do "some type of transaction." Gabriel testified that he did not actually see anything change hands, but that the two men got very close to each other and moved their hands in a way "conducive to narcotic activity." Gabriel admitted, however, that anything could have been passed either way. Fiske then walked to Gabriel's car, leaned in, and said, "I have it. Let me see the money." Gabriel showed the man the money, the man showed him the rock of crack, they exchanged items, and Gabriel drove away. He then reported McPherson's position to facilitate arrest.

Officer Harrell testified that he observed the transaction while providing "close cover"—observing the controlled buy from a nearby car, ready to intervene if the operation went awry. He said that he was in a car about twenty feet away from the sale. He testified that he saw Fiske approach Gabriel's car, then walk over to McPherson. He saw McPherson take something small out of his pocket and hand it to Fiske; Harrell admitted that he did not see what McPherson had in his hand. Harrell then saw Fiske approach Gabriel's car where the exchange occurred. Harrell then watched as other officers moved in and arrested McPherson and Fiske. Harrell testified on cross-examination that other men were in the area engaging in activities consistent with narcotics sales, and that those other men left when the arrests began.

Harrell also admitted reviewing Gabriel's offense report and "other supplements" just before testifying. After his testimony, outside the hearing of the jury, McPherson objected and asked that Harrell's testimony be struck as violative of the rule that witnesses not hear or review the testimony of other witnesses. *See* Tex. R. Evid. 614. The court overruled the motion.

Officer Samuel Bryson testified that he was one of two take-down officers on this controlled buy; Officer Leslie Kyle was the other. After getting the signal to move in, Bryson ordered McPherson and Fiske to stop walking. Fiske did and Bryson arrested him, but McPherson ran and was pursued by Kyle. Out of the corner of his eye, Bryson saw McPherson throw an object into the air as he was being tackled by Kyle.

Kyle testified that he pursued McPherson for about a hundred feet, closing from an initial distance of three car lengths. He testified that, as they ran, McPherson reached into his right front pocket—an action that drew Kyle's attention because McPherson could have been reaching for a weapon. Kyle testified that McPherson pulled out a prescription pill bottle, took the cap off, and threw it in the air just over Kyle's shoulder as he tackled McPherson. Kyle testified that McPherson said that he ran "to do what he needed to do." Kyle said that he saw all the above-described actions despite the fact that they occurred while McPherson was running away from him.

Officer Jeff White testified that he arrived after McPherson was in custody. Kyle directed his attention to the pill bottle and the rocks of crack surrounding it that were on the ground ten to fifteen feet from McPherson and Kyle. White testified that he never saw McPherson with the bottle, but that the location of the bottle and rocks were consistent with Kyle's recitation of events. Believing that the events were not in doubt, White picked up the bottle without checking for fingerprints. No rocks were in the bottle, but White collected fifteen rocks of crack nearby.

White performed a field test on one of the rocks, which indicated the presence of cocaine. This preliminary test result was confirmed by a police forensic chemist.

## DISCUSSION

McPherson challenges the guilty verdict on four grounds. He contends that the evidence is legally and factually insufficient to support the verdict. He also contends that his counsel was ineffective for failing to object to improper jury argument. Finally, he contends that the court erred by admitting testimony from Harrell, who reviewed the statements of others when preparing to testify.

### Sufficiency of the evidence

McPherson was convicted of possession with intent to deliver cocaine. *See* Tex. Health & Safety Code Ann. §§ 481.002, 481.112 (West 2003 & Supp. 2004). He expressly challenges only the finding that he had the intent to deliver cocaine, not that he possessed it. An intent to deliver a controlled substance may be proved by circumstantial evidence. *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *Smith v. State*, 737 S.W.2d 933, 941 (Tex. App.—Dallas 1987, pet. ref'd). Factors courts have considered include: (1) the nature of the location at which the defendant was arrested; (2) the quantity of controlled substance in the defendant's possession; (3) the manner of packaging; (4) the presence of drug paraphernalia (for either drug use or sale); (5) the defendant's possession of large amounts of cash; and (6) the defendant's status as a drug user. *Williams*, 902 S.W.2d at 507. McPherson challenges both the legal and factual sufficiency of the evidence.

4

*Legal sufficiency*

In conducting a legal sufficiency review, we ask whether, viewing all the evidence in the light most favorable to the adjudication, any rational trier of fact could have found the essential fact beyond a reasonable doubt. *See Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We do not realign, disregard, or weigh the evidence. *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The trier of fact has the responsibility of weighing all the evidence, resolving evidentiary conflicts, and drawing reasonable conclusions from the evidence. *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001). McPherson argues that if, after viewing the record in this manner, we conclude that the evidence is equally supportive of guilt and innocence, we must find the evidence insufficient. *See United States v. Sultan*, 115 F.3d 321, 325 (5th Cir. 1997).

McPherson contends that the evidence is legally insufficient to support the finding that he possessed cocaine with the intent to distribute it. He asserts that there is no evidence of what, if anything, he passed to Fiske; he argues that the officers' testimony is consistent with him passing money to Fiske or accepting rather than giving something. He also argues that there is no evidence that all of the rocks of crack scooped up near the pill bottle were in that bottle when he threw it. He points to Harrell's testimony that there were other probable drug dealers in the area who scattered when the take-down began; he argues that at least some of the rocks could just as easily have been theirs.

We nevertheless conclude that, viewed most favorably to the verdict, the evidence supports the verdict. The jury heard testimony that Fiske contacted Gabriel, learned that Gabriel

5

wanted a rock of crack, went to McPherson, received something from McPherson,[1] then returned to Gabriel and announced, "I have it," displayed the crack, and gave the crack to Gabriel in exchange for money. A reasonable jury could conclude from this sequence that Fiske did not possess crack until McPherson gave it to him, and that McPherson gave the crack to Fiske intending that he pass it along to Gabriel. This supports the finding of possession with intent to distribute.

Regarding the amount of crack, the jury could reasonably infer that all the crack found near the pill bottle belonged to McPherson. Although no one testified definitively that every rock of cocaine found near the pill bottle emanated from that bottle, Kyle testified that McPherson opened the pill bottle and threw it over his shoulder, spilling the rocks near the bottle. White testified that he picked up rocks near the bottle. Although Harrell testified that there were other suspected dealers nearby who fled, there was no testimony that any of the other dealers fled across the chase line or near where the pill bottle landed; rather, the testimony described a brief, unimpeded two-person chase. (Fiske did not attempt to flee.) The jury was thus entitled to conclude that McPherson had at least fifteen rocks of cocaine on his person at the time he made an exchange with Fiske. The absence of drug use paraphernalia further supports the conclusion that McPherson possessed the crack to distribute, not to consume. Rather than a stack of inferences, the evidence describes a web of circumstances that connect to provide legally sufficient evidence to satisfy the elements of the offense.

---

[1] Although Gabriel was not certain of the direction of the McPherson-Fiske exchange, Harrell was unequivocal that McPherson passed something *to* Fiske.

*Factual sufficiency*

In determining the factual sufficiency of the elements of the offense, the reviewing court "views all the evidence without the prism of 'in the light most favorable to the prosecution,' and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The evidence may also be factually insufficient to support a criminal conviction if the evidence in support of the existence of a vital fact, standing alone, is factually too weak to support it. *Goodman v. State*, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 11. In conducting its factual sufficiency review, an appellate court reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination. *Clewis*, 922 S.W.2d at 133. However, appellate courts should exercise their fact jurisdiction only to prevent a manifestly unjust result. *Id.* at 135. Appellate courts are not free to reweigh the evidence and set aside a jury verdict merely because the reviewing judges feel that a different result is more reasonable. *Id.* A factual sufficiency review must employ appropriate deference to the fact finder's role as the sole judge of the weight and credibility to be given to witness testimony. *Johnson*, 23 S.W.3d at 7.

McPherson argues that the circumstantial evidence is too weak to support the verdict. He stresses the lack of certainty of the direction of the exchange between McPherson and Fiske. He also argues that the idea that McPherson pulled the pill bottle out of his pocket in such a way that the pursuing Kyle could plainly see him borders on the absurd. He points to his trial counsel's testimony from the hearing on his motion new trial that jurors smirked and were skeptical of Kyle's version of events. In his brief, McPherson argues as follows:

7

Based on trial counsel's observations of the jurors' reactions, trial counsel testified that he "firmly believe[d] [that] they [the jurors] were laughing at [counsel's] gestures [demonstrating how Mr. McPherson would have to be holding the pill bottle] and what [Officer Kyle] was saying as far as holding . . . up [the pill bottle] and making it where he could see the pill bottle being open."

McPherson argues that, after discounting Kyle's testimony based on its facial implausibility and the jurors' reported reactions to it, the record lacks factually sufficient evidence to tie McPherson to the rocks surrounding the pill bottle and thus to the requisite intent.

We are not convinced that the record shows either that Kyle's testimony is facially implausible or that the jurors rejected it; rather, the guilty verdict strongly indicates that they did not reject the testimony. On direct examination, Kyle testified, "As I was chasing him, he reached into his right front pocket, pulled out a bottle—a pill bottle for prescription pills, took the cap off and threw it in the air just as I tackled him." On cross-examination Kyle reiterated that he saw McPherson's right hand "go down . . . . His hand came up, I saw the pill bottle, he took the lid off and just flung it in the air just like that." The following exchange then occurred:

Q. So your testimony is, he held it up where you could see it from behind while he removed the tip?

A. Yes, sir, I saw the whole thing.

Q. Did you state that he raised his arms above his head so you could have a good view in the offense report?

A. No, I didn't list that in the offense report.

. . . .

Q. When you tackled Mr. McPherson, you stated that this pill bottle, he had raised his arms up and removed the top flew over your back; is that correct?

8

A. Yes, sir. It went right over my shoulder.

Viewing the record neutrally, we find no testimony by Kyle that McPherson ran holding his hands above his head to enable Kyle to have a good look. Under direct examination, Kyle said nothing remotely of the sort. A rational juror could focus on the direct examination testimony's congruence with Kyle's statements on cross-examination that he "saw the whole thing," that he didn't write in his report that McPherson ran with his hands over his head, and that the pill bottle went right over his shoulder. Because there is no video record of the trial before us, it is not clear whether the jury smirked at Kyle's testimony or at defense counsel's re-enactment of the events; the finding of guilt indicates the latter. The jury was entitled to believe that movement during the chase provided Kyle a sufficient view of McPherson's actions to discern what McPherson was doing with the pill bottle.

Viewing the record neutrally, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

**Violation of the Rule**

McPherson complains that Harrell admitted that, after the Rule was invoked, he read the reports and statements of other witnesses in order to prepare for his testimony.

When a party or the trial court itself invokes what is often referred to as "the Rule," the trial court orders witnesses to remain outside the courtroom. *See* Tex. R. Evid. 614. A related statute provides as follows:

> Witnesses, when placed under rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by

permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under rule.

Tex. Crim. Proc. Code Ann. art. 36.06 (West 1981). The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989).

When a party complains of the admission of evidence in violation of the Rule, we look at whether the complaining party objected and was harmed. *Id*. at 240; *see also Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003). Injury or prejudice to the party in a criminal trial is dependent upon a showing of two criteria: (a) whether the witness actually conferred with or heard the testimony of the other witness; and (b) whether the witness's testimony contradicts the testimony of a witness from the opposing side or corroborates the testimony of another witness he had conferred with or had otherwise actually heard. *Webb*, 766 S.W.2d at 240.

Harrell's reading of non-testimonial reports does not show a violation. The Rule prevents witnesses from hearing the testimony of other witnesses or reading any report of the testimony or comment upon the testimony. *See* Tex. R. Evid. 614; Tex. Code Crim. Proc. Ann. art. 36.06. The Rule does not otherwise restrict witnesses' reading. It does not prohibit witnesses from reading statements by other witnesses that are not testimony. The district court did not err by overruling this objection.

**Effective assistance of counsel**

McPherson contends that his counsel was ineffective for failing to object to a portion of the State's jury argument that concerned his choice not to testify.

10

The test for determining ineffective assistance of counsel has two parts. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland*). To establish ineffective assistance of counsel, an appellant must first show counsel's performance was deficient to the extent that it fell below a minimum objective level of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, an appellant must demonstrate that he was prejudiced by such performance, so that there was a reasonable probability that the result of the trial would have been different had counsel properly objected. *Id.* at 691-92. The review of a claim of ineffective assistance of counsel is highly deferential. *Strickland*, 466 U.S. at 687. A reviewing court must indulge a strong presumption that a trial counsel's conduct falls within a wide range of reasonable representation. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *Parmer v. State*, 38 S.W.3d 661, 666 (Tex. Crim. App. 2000). Courts assay the totality of counsel's representation rather than isolated acts or omissions. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1996). Relief may nevertheless be granted because of a single error. See *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979). The *Strickland* standard has never been interpreted to mean that the accused is entitled to errorless or perfect counsel. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986).

Defendants have a right not to testify. The Fifth Amendment to the United States Constitution states, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The parallel provision under the Texas

11

Constitution states:  "[i]n all criminal prosecutions the accused . . . shall not be compelled to give evidence against himself."  Tex. Const. art. I, § 10.  The State codified this right as follows:  "Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."  Tex. Code Crim. Proc. Ann. art. 38.08 (West 1979).  The court instructed jurors that they were not to consider the defendant's choice not to testify as a circumstance against him, and that during their deliberations they were not to "allude to, comment on, or in any manner refer to the fact that the defendant has not testified."

The right against self-incrimination is violated when the prosecutor's argument is manifestly intended to be, or is of such character that the jury would naturally and necessarily take it to be, a comment on the accused's failure to testify.  *Caldwell v. State*, 818 S.W.2d 790, 800 (Tex. Crim. App. 1991).  Language that might be construed as an implied or indirect allusion to the defendant's failure to testify will not necessitate a reversal.  *Patrick v. State*, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1985).  The nature of the comment is critical; for example, courts will reverse a conviction for a remark calling the jury's attention to the absence of evidence that only the defendant could personally supply, but will not reverse if the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony.  *Id*.

In order to gain reversal, McPherson must show that the failure to object rendered counsel's representation so deficient that it fell below a minimum objective level of reasonableness under prevailing professional norms, and that there is a reasonable probability that such deficiency affected the result of the trial.  *See Strickland*, 466 U.S. at 687-92.

12

While going through the jury charge paragraph by paragraph, explaining how the jury should apply the charge, the prosecutor made the following statement without objection:

> Paragraph 8, the defendant's right not to testify. It's human nature to wonder. You can wonder what he would have said, why he didn't say it, but you can't hold it against him. It's human nature to wonder, but you can't say, you know, I'm not sure if the State proved its case, but he didn't testify, so I'm going to find him guilty. You cannot do that. But it's human nature to wonder. You can wonder, you can't hold it against him. You can't hold it against him that he didn't testify.

McPherson did not request and the court did not provide a curative instruction.

McPherson's trial counsel testified at the motion for new trial hearing that he did not object because he hoped not to draw the jury's attention to his client's failure to testify. He said:

> And at the time I simply hoped that it would slide past the jury as fast as possible and the issue would be forgotten. We had beaten it to death and I believe even in voir dire we had had several strikes for cause on people who said that that would be a real issue to them.

Trial counsel testified that he made his decision based on his impression of the jury's reaction.

On appeal, McPherson contends that the prosecutor urged jurors to wonder why appellant did not testify and argues that his trial counsel was ineffective for failing to object to what McPherson describes as an egregious misstatement of the law.

As presented in this case, counsel's performance was deficient only if the prosecutor's comments were improper. Even so, permitting an improper comment to pass without objection would not necessarily render the entire representation ineffective. *See Wilkerson*, 726 S.W.2d at 548. Contrary to McPherson's argument, the prosecutor's comments are less an invitation to wonder

about McPherson's failure to testify than an acknowledgment that jurors might independently wonder.  Each mention of the tendency to wonder is followed by an admonishment that jurors cannot hold the choice not to testify against McPherson.  The prosecutor's comments did not occur in the context of a discussion of any element of the case.  But, because the plain language of the statute prohibits even allusions to a defendant's failure to testify, we will continue the analysis.  *See* Tex. Code Crim. Proc. Ann. art. 38.08.

Counsel was deficient only if there is a reasonable probability that the failure to object affected the outcome of McPherson's case.  Even if a jury argument is outside of the permissible scope of argument,[2] an instruction to disregard the remarks will normally cure the error, unless "in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused."  *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).  This is not a situation where the prosecutor gestures to a nontestifying defendant and urges the jury to consider the defendant's failure to show remorse against him.  *See Wead v. State*, 94 S.W.3d 131, 135-37 (Tex. App.—Corpus Christi 2002, pet. filed); *Oliva v. State*, 942 S.W.2d 727, 734 (Tex. App.—Houston [1st Dist.] 1997, pet. dism'd improv. grant).  The context of the prosecutor's comments about the human nature of wondering, including repeated reminders that the jurors could not hold McPherson's silence against him, render the comment noninflammatory.  An objection likely would have caused the district court to instruct the jurors that they must not wonder

---

[2] To be permissible, the State's jury argument must fall within one of four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.  *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

about McPherson's choice not to testify. The court would likely have reiterated, as the prosecutor did, that jurors could not hold the choice not to testify against McPherson.

Even assuming that this argument is so improper that an instruction would not have cured it, we must assess the likelihood of whether proper preservation of this error would have altered the result of the trial. This requires analysis under Texas Rule of Appellate Procedure 44.2(a), under which we must reverse the judgment of the trial court unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. When performing this analysis, we consider the following factors: 1) the source of the error; 2) the nature of the error; 3) whether the error was emphasized and its probable collateral implications; 4) the weight a juror would probably place upon the error; and 5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990). Though no one factor is dispositive, the existence and severity of these factors are indicative of the harm caused by the State's improper argument. *Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996). The error alleged is improper argument by the State that was not emphasized; the comments are set out above and there was no objection or colloquy to draw further attention to it. Even if the jury dwelled on the prosecutor's argument, the prosecutor's repeated message is the same as the proper instruction—the jury cannot hold McPherson's silence against him. Because the law expressly does not allow comment upon the defendant's silence and the risk to the State's case from making such comment is high, we find that holding this argument harmless based on these particular facts would not encourage the State to repeat this argument. *See Wead*, 94 S.W.3d at 135-37; *Oliva*

15

*v. State*, 942 S.W.2d at 734. We conclude that McPherson has not shown any likelihood that preservation of the error would have altered the result of the trial.

Even if the failure to object was a mistake, we conclude that McPherson has not shown that it undermined counsel's representation severely enough to render his assistance ineffective. We note that McPherson's trial attorney testified that he chose not to object in order to avoid emphasizing his client's failure to testify. This is a legitimate strategic choice, given the nature of the prosecutor's argument. Further, this failure to object is the only deficiency of which McPherson complains. His counsel filed discovery motions, raised other objections, and examined witnesses. McPherson has not shown that the result of the trial would have been different had counsel properly objected to the jury argument. Accordingly, we conclude that he has not shown that his counsel was ineffective. *See Strickland*, 466 U.S. at 691-92.

## CONCLUSION

Having resolved all issues against appellant, we affirm the judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: January 29, 2004

Do Not Publish

16